**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15 CR 102 |
| | ) | Hon. Sharon Johnson Coleman |
| TIMOTHY MASON and, | ) | |
| MARIANA GERZANYCH | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' JOINT MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION TO DISMISS THE INDICTMENT ON GROUNDS OF DUPLICITOUSNESS**

Defendant, **TIMOTHY MASON and MARIANA GERZANYCH**, by and through

their attorneys, **BLEGEN & GARVEY** and **NISHAY K. SANAN**, respectfully submit the

following memorandum of law in support of their motion to dismiss the indictment on the

grounds of duplicitousness.

**I.      Introduction**

Although the indictment in this matter purports to charge a single scheme to defraud, it in

fact alleges multiple, distinct schemes involving separate victims, separate time periods, and

separate means of commission.  Because the indictment charges these multiple offenses in each

single count, it must be dismissed as duplicitous.[1]

In short, it appears that the charges are directed primarily at a scheme to defraud the City

of Chicago of federal grant funds.[2]  The indictment alleges that the City of Chicago awarded to

Defendants' company 350Green LLC, a grant that was funded by the United States Department

of Energy pursuant to the American Recovery and Reinvestment Act of 2009.  Each count of the

---

[1] Alternatively the duplicative offenses could be stricken from the indictment.
[2] The indictment's allegations are taken as true for purposes of this motion only.

indictment alleges, as the jurisdictional wiring element, an electronic transfer of money from the City of Chicago to 350Green or an email from 350Green to the City of Chicago.

Nevertheless, and appearing almost as throw-ins, the indictment also alleges grant fraud in relation to other government entities – the State of Pennsylvania, the Bay Area Air Quality Management District, and the Association of Bay Area Governments. Each of these grants, of course, has a separate contract containing separate terms, separate requirements, etc. In fact, the only connection appears to be that the grants were awarded by each entity to 350Green. This meager connection is not sufficient to overcome a duplicity challenge, and the admission of evidence related to these other governmental entities would greatly prejudice defendants. As such, the indictment should be dismissed.[3] There also appears to be a complete absence of venue for these other alleged schemes in this District as they occurred, if at all, in California or Pennsylvania.[4]

## II.    The Indictment

Defendants are charged in a five count indictment alleging wire fraud in violation of 18 U.S.C. § 1343. The scheme to defraud, which is set forth in Count One and incorporated into the remaining counts, asserts that Mason and Gerzanych were the president and CEO, respectively, of 350Green, LLC, a company based out of Los Angeles and in the business of installing and operating plug-in electric vehicle charging stations. (Indictment, pp. 1-2)

The indictment alleges that 350Green obtained grant agreements with the City of Chicago, the Pennsylvania Department of Environmental Protection, the Bay Area Air Quality Management District, and the Association of Bay Area Governments. *Id.* at 2-3. The grants

---

[3] Alternatively, the allegations related to non-Chicago grants could be stricken from the indictment.
[4] Defendants have filed a motion to dismiss the indictment based on a lack of venue. In short, because 350Green is a California company, it appears that there is no connection between this District and the Pennsylvania or Bay Area grants. Defendants' venue motion depends, of course, on the Court finding that the indictment is duplicitous.

called for the installation and operation of electric car charging stations in the various jurisdictions; *i.e.*, Chicago, Pennsylvania and California. *Id.* at 2-4. The Indictment asserts that three of the grants required proof that 350Green had paid subcontractors and vendors prior to submitting bills for reimbursement. The fourth grant required 350Green to submit proof that it had incurred expenses prior to seeking reimbursement. *Id.* at 4.

The essence of the fraud alleged is that the defendants, in contravention of the language in the grant agreements, submitted invoices for subcontractor work for which 350Green had not paid; that they submitted invoices for car charging stations for which they had not paid; and that they submitted false documents and sent out emails misrepresenting 350Green's financial status in order to continue the scheme and cover up the existence of the scheme. *Id.* at 4-7.

## III.    The Law

Rule 8(a) of the Federal Rules of Criminal Procedure governs the joinder of offenses and requires that an indictment charge a separate count for each offense. Where more than one offense is charged in a single count, that count is duplicitous, and must be either dismissed, or the government may elect to proceed on a specified offense. *See*, *United States v. Hughes*, 310 F.3d 557, 560 (7th Cir. 2002); *United States v. Ziedman*, 540 F.2d 314, 318 (7th Cir. 1976). The prohibition against duplicity is designed to protect a variety of defendants' rights. First and foremost, duplicitous charging impacts a defendant's fundamental right to a unanimous verdict. Where more than one scheme is charged in a single count, individual jurors may render verdicts based on different schemes, and a general verdict form will not reveal whether a defendant was, in fact, found guilty of one scheme but not another, or whether a defendant was acquitted on one or more of the blended offenses. *United States v. Buchmeier*, 255 F.3d 415, 425 (7th Cir.2001) ("The overall vice of duplicity is that the jury cannot in a general verdict render its finding on

each offense, making it difficult to determine whether a conviction rests on only one of the offenses or both."). In short, "collapsing separate offenses into a single count . . . prevents the jury from convicting on one offense and acquitting on another." *United States v. Campbell*, 279 F.3d 392, 398 (6th Cir. 2002).

In addition, duplicitous charging can also violate a defendant's Fifth and Sixth Amendment rights to notice of the charges against him and can impact the Fifth Amendment's protection against double jeopardy. The inherently ambiguous nature of a duplicitous count could allow prosecutors, from the same jurisdiction or another, to bring charges based on some part of the blended offenses. *See*, *Buchmeier*, 255 F.3d at 415; *United States v. Berardi*, 675 F.2d 894, 897 (7th Cir. 1982); *United States v. Tanner*, 471 F.2d 128, 139 (7th Cir. 1971).

Lastly, duplicitous charging creates the risk of prejudicial evidentiary rulings, meaning that evidence which would be deemed irrelevant or otherwise inadmissible might be admitted because it relates to one of the improperly blended offenses. The sentencing process can also be adversely affected. *See*, *e.g.*, *United States v. Starks*, 472 F.3d 466, 470–71 (7th Cir. 2006) ("[A] duplicitous indictment may expose a defendant to other adverse effects including improper notice of the charges against him, prejudice in shaping of evidentiary rulings, in sentencing, in limiting review on appeal, and in exposure to double jeopardy."); *United States v. Marshall*, 75 F.3d 1097, 1111 (7th Cir. 1996); *Buchmeier, supra*.

Distinguishing an impermissibly duplicitous count from a count which simply charges multiple means of committing a single offense has been described as a "difficult" evaluation. *Berardi*, 675 F.2d at 898. Courts look to the statute defining the offense and attempt to determine, "Congress' intended unit of prosecution" for the offense. *Buchmeier*, 255 F.3d at 421. In the case of an indictment charging wire fraud, each use of the wires in furtherance of a

single scheme can be charged as a separate offense so long as the defendant is not prejudiced by merging multiple wirings in the same count. *See, e.g.*, *Ziedman*, 540 F.2d at 317; *Buchmeier*, 255 F.3d at 421; *United States v. Margiotta*, 646 F.2d 729, 733 (2d Cir. 1981). An indictment may not, however, charge multiple schemes in one fraud count because "[i]f the charge sets forth more than one scheme to defraud, it is duplicitous." *Worthington v. United States*, 64 F.2d 936, 938 (7th Cir. 1993).

Challenges to criminal charges are generally determined by looking to the face of the indictment, and the government is afforded considerable discretion in characterizing the offense. Nevertheless, there are "limits to the Government's discretion," particularly where a defendant can show prejudice from a defective pleading. *Tanner*, 471 F.2d at 139 (reversal of conviction based on duplicity where single count charged defendants with multiple instances of interstate transportation of explosives).

Lastly, where multiple offenses are alleged in a single count, a lack of venue in the charging district regarding one or more of those offenses creates a particular problem. *See*, *United States v. Schlei*, 122 F.3d 944 (11th Cir. 1997) (reversing conviction on duplicitous count because there was no venue as to one of the offenses charged in that count). Jury instructions can sometimes be an appropriate remedy for a duplicative indictment by ensuring that the verdict is indeed unanimous. For example, the jury could be instructed that it is required to unanimously agree as to which of the multiple offenses it has chosen to convict. *Buchmeier*, 255 F.3d at 425. But where there is a lack of venue for one or more of the offenses charged in a single count, jury instructions provide no assistance. For example, a general instruction that the jury must be unanimous as to which offense it has agreed upon leaves open the possibility that the jury selected an offense for which there is no venue. Even if the Court were to go further and also

5

require a special verdict directing the jury to identify the particular offense upon which they have unanimously agreed, the jury may well select an offense for which there is no venue, thereby rendering an improper conviction.

## IV.    Analysis

### A.    The Indictment Charges Multiple, Separate Schemes in Each Count

The face of the indictment makes clear that the government has amalgamated multiple fraud scheme into single counts. First, the indictment reveals that each of the purported victims is a separate governmental entity with no connection other than having entered into a grant agreement with 350Green. The indictment lists as victims: the City of Chicago, the Bay Area Air Quality Management District, the Pennsylvania Department of Environmental Protection, and the Association of Bay Area Governments. No connection between these purported victims is alleged, however, and, even though two are located in the Bay area in California, they all appear to be distinct entities.

Second, with regard to the timing of 350Green entering the various grant agreements, the indictment makes clear that the time periods are distinct. The indictment alleges the following dates for the grant agreements: October 15, 2010 for the Chicago grant; February 3, 2011 for the Bay Area Air Quality Management District grant; June 20, 2011 for the Pennsylvania Department of Environmental Protection grant; February 2, 2012 for a "second, separate contract with Pennsylvania"; and, May 1, 2012 for Association of Bay Area Governments grant. (Indictment, pp. 2-3)

Third, each of the grant contracts has separate terms. For example, with regard to financial terms, the Chicago grant was backed by federal funds, was for the installation and operation of Level 2 and Level 3 plug-in electric vehicle charging stations in the Chicago area,

awarded 350Green $1.9 million in grant funds, and called for 350Green to contribute $6.8 million of its own funds. The Bay Area Air Quality Management District grant also involved the installation and operation of Level 2 and Level 3 chargers, but called for 350Green to contribute $331,806 of its own funds and to receive grant funds of $99,996. The other grant contracts had similarly distinct terms regarding funding amounts. *Id*.

Moreover, the issue of whether the terms of each grant allowed 350Green to bill for grant funds when it incurred expenses or whether it could only bill after having actually paid subcontractors will undoubtedly be an important and contested issue at trial. The indictment identifies this issue but does not set forth specific contract language. Instead, the indictment asserts that three of the governmental entities, "Chicago, Pennsylvania, and Bay Area Governments" all required 350Green to "submit proof that it *had paid* its subcontractors and vendors before 350Green could be reimbursed from grant funds." *Id*. at 4 (emphasis added). With regard to the Bay Area Air Quality Management District, however, the indictment alleges that the contract required 350 Green to "submit proof that it had *incurred expenses* under the grant before 350Green could seek reimbursement from grant funds." *Id*. (emphasis added). Thus, even under the indictment's own language, one of the grants had an entirely different requirement regarding the critical question of when 350Green could bill for and receive grant funds.[5]

Lastly, although the government alleges that there is a singular scheme, the actual wire transactions charged in each count of the indictment relate only to the Chicago grant. Count One

---

[5] Going beyond the face of the indictment, the grant agreements each contained different language with regard to how payment was to be obtained. The Chicago agreement, for example, is unclear regarding when invoices could be submitted as it indicates that 350Green could bill for "costs incurred and paid directly by you." A "subcontractor payment certification," which was required to be submitted to Chicago with each 350Green invoice indicates that, "I understand that my company is obligated to pay any and all subcontractors identified above within 14 days of receipt of payment from the City of Chicago."

alleges a wire transfer of $1,013,453.69 from the City of Chicago to 350Green's bank account. Count Two alleges a wire transfer of $181,981 from the City of Chicago to 350Green's bank account. Count Three alleges a wire transfer of $46,799.62 from the City of Chicago to 350Green's bank account. Count Four alleges an email transmission from a 350Green employee in California to a City of Chicago employee, and Count Five alleges an email transmission from Ms. Gerzanych to two City of Chicago employees. Thus, despite charging multiple, distinct governmental entities as part of a single scheme to defraud, each of the jurisdictional wirings relates only to the Chicago grant. If ever there was a telltale sign that the Pennsylvania and California grants were simply throw-ins added to a Chicago grant fraud scheme, this is it. Not a single wire transaction related to any other victim / government entity is alleged in the indictment.

### B.    Prejudice

The prejudice of allowing Defendants to be tried based upon this duplicitous indictment is great. There is, of course, a very real risk that the defendants could be convicted for a scheme that the jury has not unanimously agreed upon. The jury could quite easily, for example, conclude that the language of one grant contract supports the defense position while the language of another contract supports the government. And, because there is no venue in this district for any of the schemes other than the Chicago grant scheme, that risk is compounded by the possibility that the defendants could be convicted in violation of the Constitution's venue requirement. Nor can this danger be cured by jury instructions. Even if the jury were to be instructed that they must be unanimous as to the scheme upon which they are basing their verdict, it would nevertheless be unclear whether the jury chose a scheme for which there is no

venue. Special verdict forms would also not resolve the issue, for if the jury chooses a scheme for which there is no venue, a conviction in violation of the constitution would have occurred.

Similarly, if this duplicitous indictment is allowed to proceed, Defendants will have little or no double jeopardy protection against charges in other jurisdictions. The allegations related to grants from other, non-Chicago, governmental entities are only available to be charged in this District because they are joined, improperly in Defendants' view, with the Chicago grant conduct. Otherwise, there would be no venue for those charges in this District. As such, there is a very real risk that permitting this duplicitous indictment to go forward here would permit charging by other jurisdictions, for the same offenses, in the future. It must be remembered that the only wire transactions charged in the indictment relate to the Chicago grant. There appears to be little to prevent another prosecutor located in another jurisdiction from alleging wire fraud based on an email or bank transaction related to a Pennsylvania or California grant.

Defendants will also suffer significant evidentiary prejudice by the merger of four separate fraud schemes into a single indictment. There is, of course, the simple but very powerful propensity argument available to the government as a result of the duplicitous indictment. Propensity is, of course, a forbidden use of 404(b) evidence. Instead, there must be a separate purpose for admitting evidence of other crimes, wrongs, or other acts. By blending four schemes into one, however, the prosecution is able to bypass 404(b) and allow the jury to convict based on the multiple instances of alleged bad conduct. This type of propensity is particularly troubling here because there are separate contracts for each of the grants with distinct language. Nevertheless, a jury may well ignore the specific language of each grant and instead simply throw out the baby with the bath water.

Moreover, the language of each of the grant agreements, as well as other documents related to the grants, will be critically important to determining whether the government can prove that fraud was committed beyond a reasonable doubt. As but the most obvious example, whether the language of a particular grant allowed for billing by 350Green when costs were incurred, or only after costs had been actually paid, is an evidentiary dispute that the jury will be required to resolve. By amalgamating multiple separate grants into a single scheme, however, the indictment creates a significant danger that the jury will conflate the terms of the agreements, or even if they are able to keep the contracts' terms separate, will simply conclude that all of the agreements mean the same thing, despite their distinct language.

Other evidentiary issues as well as sentencing, if the case reaches that point, could be adversely impacted as well. If the current indictment is allowed to proceed, Defendants will be required to investigate and potentially present evidence and witnesses from remote jurisdictions. Defendants may also someday be sentenced, and perhaps face restitution and forfeiture judgements for offenses of which they were never found guilty by a jury.

## V.      Conclusion

In light of the above, Defendants respectfully request that the Court dismiss the

indictment on the basis that it is duplicitous, or, in the alternative, strike the non-Chicago grant

allegations from the indictment.


Respectfully submitted,

s/Patrick W. Blegen
**PATRICK W. BLEGEN**, Attorney for Defendant
Timothy Mason

s/Nishay K. Sanan
**NISHAY K. SANAN**, Attorney for Defendant
Mariana Gerzanych


**BLEGEN & GARVEY**          **NISHAY K. SANAN**
53 West Jackson Boulevard,   53 West Jackson Boulevard
Suite 1437                   Suite 1437
Chicago, Illinois 60604      Chicago, Illinois 60604
(312) 957-0100               (312) 692-0360