UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA    )
    )
    v.    )    No. 15 CR 102
    )    Judge Sharon Johnson Coleman
TIMOTHY MASON and    )
MARIANA GERZANYCH    )

**GOVERNMENT'S RESPONSE TO DEFENDANTS' JOINT MOTIONS TO DISMISS FOR DUPLICITOUSNESS AND LACK OF VENUE**

The UNITED STATES OF AMERICA, by ZACHARY T. FARDON, United States Attorney for the Northern District of Illinois, respectfully submits its response to Defendant Timothy Mason and Mariana Gerzanych's Joint Motions to Dismiss the Indictment for Duplicitousness and Lack of Venue. R.33, 34, 35.

Defendants are charged with devising and participating in a wire fraud scheme in which defendants, by fraudulently representing that they had purchased or contracted to purchase plug-in electric vehicle chargers, attempted to obtain and obtained over a million dollars in grant funds held by the City of Chicago and three other governmental entities: the State of Pennsylvania Department of Environmental Protection, the Bay Area Air Quality Management District, and the Association of Bay Area Governments. Now defendants ask this Court to dismiss the indictment, or in the alternative, strike the allegations pertaining to all non-Chicago entities contained within Count One of the indictment in this case because they contend that Count One is duplicitous, and as such, the Court lacks venue to entertain separate allegations regarding fraud on the non-Chicago entities. R. 33,

34, 35. For the reasons set forth below, defendants' claims of duplicitousness and an attendant lack of venue are spurious and should be denied.

## I.   THE INDICTMENT ALLEGES A SINGLE WIRE FRAUD SCHEME

As alleged in the indictment, defendants were the owners and executive officers of 350Green, a company which held itself out as an installer and operator of plug-in electric vehicle (PEV) charging stations. R.1 Count One, ¶ 1 (a-c). Count One further alleges that the City of Chicago, the State of Pennslyvania Department of Environmental Protection, and two California governmental entities, the Bay Area Air Quality Management District and the Association of Bay Area Governments, offered grant funds for the installation of PEV charging stations. ¶ 1(h). Count One of the indictment alleges that defendants, owners of 350Green, schemed to defraud these four governmental entities between August 2010 and September 2012, in order to obtain grant funds from those agencies. ¶ 2.

Specifically, the indictment alleges that between October 15, 2010 and May 1, 2012, 350Green entered into similar contracts with each of these governmental entities for the installation and operation of PEV chargers, which was to be funded in part by grant funds from the governmental agency and in part by 350Green itself. ¶¶ 1(i) through 1(m). The first, and most renumerative, contract was with the City of Chicago in October 2010, followed by contracts with the Bay Area Air Quality Management District, the state of Pennsylvania, and finally, in May 2012, with the Association of Bay Area Governments. As set forth in ¶ 1(n) and ¶ 1(o), the governmental entities required proof that expenses had been incurred, or that

subcontractors had actually been paid, before the governmental entities would release the grant funds to 350Green.

Count One alleges that, in order to obtain grant funds from each of these governmental entities, the defendants made false statements regarding expenditures made or incurred, and then made false statements to three of the four entities who had raised questions about 350Green's finances. ¶ 3. In particular, the indictment alleges that defendants, in order to obtain grant funds, created false invoices for a company called Actium Power, which claimed that Actium Power supplied charges to 350Green, and submitted those invoices to the four governmental agencies to support a claim for payment from the grant funds. ¶ 4. Defendants are alleged to have created fake checks, purporting to be evidence of payment from 350Green to Actium for the chargers, and submitted those checks to three of the four governmental entities in support of their request for payment from the grant funds, when in fact there had been no payment to Actium Power or any other entity for the PEV chargers. ¶ 5. The indictment also alleges that, in order to cover up the scheme, in both Chicago and elsewhere, defendants made false representations regarding reasons for non-payment and the state of 350Green's finances, to vendors and subcontractors, the City of Chicago, and the Bay Area Governments, among others. ¶¶ 6-10.

## II.    LEGAL STANDARD

Federal Rule of Criminal Procedure 7(c)(1) provides that an "indictment or information must be a plain, concise, and definite written statement of the essential

facts constituting the offense charged." In the Seventh Circuit, "an indictment is legally sufficient if (1) it states all the elements of the crime charged, (2) adequately informs the defendant of the nature of the charges against him, and (3) allows the defendant to assert the judgment as a bar to future prosecutions of the same offense." *United States v. Vaughn*, 722 F.3d 918, 925 (7th Cir. 2013).

To succeed in a challenge to the validity of an indictment, a defendant "must demonstrate that the indictment did not satisfy one or more of the required elements and that he suffered prejudice from the alleged deficiency." *Id.* "The test for validity is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards. *Id.* (quoting *United States v. Hausmann,* 345 F.3d 952, 955 (7th Cir. 2003).

Indictments are reviewed on a practical basis and in their entirety, rather than "in a hypertechnical manner." *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000). When evaluating a challenge to the sufficiency of an indictment, it is "reviewed on its face, regardless of the strength or weakness of the government's case," *United States v. White,* 610 F.3d 956, 958 (7th Cir. 2010), and the allegations contained in the indictment are accepted as true. *United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009)("Challenging an indictment is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence.")

A duplicitous charge is one that joins two or more distinct crimes in a single count. *United States v. Davis,* 471 F.3d 783, 790 (7th Cir.2006). A duplicitous

indictment "creates a risk that the jury might return a less than unanimous guilty verdict, potentially exposes the defendant to prejudice at trial and sentencing, and in some cases subjects the defendant to double jeopardy." *United States v. Pansier*, 576 F.3d 726, 734 (7th Cir. 2009). *See also Davis*, 471 F.3d at 790.

However, "an indictment is not duplicitous if it charges a single offense carried out through many different means." *Id. See also Worthington v. United States*, 64 F.2d at 938-39 (7th Cir. 1933)("the fraudulent scheme of the entrapper may be a single one, yet means to accomplish the fraud may be many.") Thus, an indictment is not "prejudicially duplicitous" when it, "fairly interpreted" alleges a "continuing course of conduct during a discrete period of time." *Davis*, 471 F.3d at 791.

## III.  ARGUMENT

The indictment charges defendants with defrauding four governmental entities between August 2010 and September 2012 in order to obtain grant money from those entities. The indictment alleges that defendants made the same core fraudulent representations to each of these four entities - that they had purchased car chargers from "Actium Power" – in order to obtain access to the grant funds to reimburse their expenses. In each case, defendants had not in fact purchased the car chargers, either from Actium Power (a fictional business incorporated by Gerzanych but without any assets, contracts, or any business activity) or the actual manufacturer of the chargers. The indictment further alleges that defendants made additional false statements regarding their financial condition to the governmental

entities as part of the scheme to defraud. While defendants entered into contracts with these entities at different times during the scheme, and while the contracts themselves were for different sums of money and in one case, contained a slightly different payment term, all of the contracts were for the provision of plug-in electric vehicle chargers and defendants made the same core fraudulent representations regarding the purchase of those chargers to each of the four governmental agencies in order to obtain the grant funds.

To convict defendants of violating 18 U.S.C. § 1343, the government must show that defendants knowingly participated in the fraud scheme charged in Count One, that defendants did so intending to defraud, that the scheme involved a materially false or fraudulent pretense, representation or promise, and that for the purpose of carrying out the scheme, defendants caused an interstate wire communication. 7th Circuit Pattern Criminal Jury Instructions, p.490. In proving the scheme, the government must prove that one or more of the false or fraudulent representations charged in the portion of the indictment describing the scheme be proved beyond a reasonable doubt, but the government is not required to prove all of them. *Id.* at 496; *see United States v. Zeidman*, 540 F.2d 314, 317 (7th Cir. 1976)(noting that "it is sufficient to convict if the jury believes that at least one of the acts of fraud was committed.")

Courts have long held that "if there is but one general scheme to defraud and numerous means for effectuating the same," the fraud charge is not duplicitous. *Worthington*, 62 F.2d at 938. Thus, there is no duplicity where a grand jury charges

6

one scheme to defraud and multiple means of carrying out the fraud against a variety of victims. *Id. See, e.g., United States v. Hammen*, 977 F.2d 379, 382-83 (7th Cir. 1992) (rejecting duplicity challenge and finding an "ongoing scheme" in bank fraud action involving more than nine different loans made to various persons and corporations over a two-year period, some of which were fraudulent nominee loans, with no allegation that the defendant benefited from any of these loans or that any of the nominees knew of any of the others); *United States v. Zeidman*, 540 F.2d 314, 318 (7th Cir. 1976) (finding no duplicity where mail fraud scheme involved fraudulent debt collection service that victimized both creditors and debtor and pointing out that "[s]chemes to defraud by mail often are multi-faceted and therefore the means used in committing the offense may be joined without duplicity"); *United States v. Hollnagel,* 10 CR 195, 2011 WL 3664885, at *9 (N.D. Ill. Aug. 19, 2011) (no duplicity where indictment charged scheme to defraud current and prospective investors and financial institutions through misrepresentations, bribes, perjury, and other misstatements where the defendants "possessed the same goal – to obtain financing for BCI and to enrich themselves"); *United States v. Black*, 469 F.Supp. 2d 513 (N.D. Ill. 2006) (no duplicity where indictment charged scheme involving seven different transactions because it did not "lump together numerous discrete instances of criminal conduct," and "the dangers of duplicity" were not present).

The indictment in this case alleges that defendants, in order to enrich themselves and their company, 350Green, defrauded multiple victims through

7

essentially the same means – by making false claims for payment based upon fraudulent invoices and checks purporting to show that defendants had made or incurred expenses under the contract, when in fact they had not, and then covering up that fraud by making false statements regarding the status of 350Green's finances. However, to support their claim that the indictment actually charges four distinct crimes, defendants focus on minor differences between the victims rather than on the allegations that defendants' fraud had a single goal and was accomplished by the same fraudulent misrepresentations.

First, defendants claim that the "the only connection" between the four governmental victims is that grants were awarded by each of the four entities to 350Green. R.34 at 2, 6. As an initial matter, the lack of connection between the *victims* has no bearing on whether or not each was a victim of the same fraud. Regardless, in this case, the grants at issue and the victims were quite similar. Each of the contracts between 350Green and the governmental entities were for the provision of plug-in electric vehicle charging stations in an arrangement funded in part by 350Green's own contributions and in part by grant funds. Most importantly, the indictment alleges that defendants accomplished their goal – to obtain funds from the governmental entities – through the same types of misrepresentations. Paragraph 4 of Count One states that defendants made the same misrepresentations to each of the four governmental entities – namely that defendants falsely represented that Actium Power had supplied plug in electric vehicle chargers to 350Green – in order to obtain grant funds from those agencies.

8

Further, the indictment alleges that defendants made false statements regarding their financial status to the governmental entities, and specifically highlights false statements made to Chicago and the Bay Area Governments, in order to conceal the scheme. *See* ¶¶ 3, 5, 10.

Defendants make no mention of these alleged misrepresentations – instead, they focus on minor differences in the contracts awarded to each of the governmental entities, including the dates of each contract, the specific funds involved in each contract, and the provisions respecting billing, as evidence that the schemes to defraud were separate. Defendants' emphasis on these differences does not transform a single scheme into multiple offenses. First, 350Green entered into contract with each of the governmental entities within the two year period alleged in the scheme. Second, the amount of grant funds available to 350Green through each of the contracts is irrelevant to whether or not 350Green's attempt to defraud the governmental entities was as part of a single scheme or multiple schemes. A scheme to defraud is not transformed into multiple schemes simply because the victims were defrauded of different amounts of money. Finally, although defendants emphasize the difference in contract provisions requiring 350Green to prove that they had paid vendors (as was true for the Chicago, Pennslyvania and Bay Area Government contracts) or incurred expenses (as was true for the Bay Area Air Quality Management District), as evidence that there were two schemes, the difference in contract language has nothing to do with means by which defendants accomplished their fraud. No matter how the payment terms of the contracts were

worded, none of the governmental entities' contracts permitted defendants to submit falsified checks and invoices purporting to show that goods and services were purchased (or invoiced) when in fact they had not been paid or invoiced. In addition, no contract term permitted defendants to make numerous false representations regarding their company's finances in order to effectuate and conceal the scheme.

Finally, defendants claim that the fact that the executions charged in the indictment relate only to the Chicago grant demonstrates that the Pennsylvania and California grants were merely "throw-ins added to a Chicago grant fraud scheme." Defendants' claim in this regard is baseless. The decision to charge particular executions in separate counts is an exercise of prosecutorial discretion that has no bearing on whether or not Count One alleges multiple crimes or a single crime. There is no requirement that a mail or wire fraud scheme be supported by separate executions representing misrepresentations made to every victim of the fraudulent scheme. As set forth in the indictment, the Chicago grant was the largest and first of the four grants obtained by defendants, who subsequently continued their scheme to defraud by obtaining additional contracts with the three other governmental entities and making the same kinds of misrepresentations to those entities in order to draw down on their grant funds. Further, as alleged in the indictment, defendants made false statements to the City of Chicago regarding the other three grant programs in an effort to retain the contract, ¶ 8, and then, when allegations of fraud surfaced in the news media, made additional false statements to

the public and directly to one of the California agencies in order to conceal their scheme. ¶ 10. Defendants' fraud against the non-Chicago entities was not separate from their fraud against the City – instead, defendants' fraudulent misrepresentations to those entities were part of a continuing course of conduct and inseparable from their attempt defraud the City of Chicago.

Further, defendants' claims of potential prejudice are unfounded. Defendants' claim that they could be prosecuted in another district for the scheme to defraud, for example, California or Pennsylvania, is without foundation. The indictment alleges that the non-Chicago governmental entities are victims of the wire fraud scheme charged in Count One. As such, the language is sufficiently specific as to prevent retrial on the same charges. Further, as to defendants' concern regarding jury unanimity in the verdict, the Seventh Circuit has dismissed such concerns with respect to fraud schemes in *Zeidman*, holding that, since proof of a scheme does not require proof of all of the misrepresentations set forth in the charging count, there can be no concern regarding jury unanimity so long as the jury instructions make clear that the jury must find that defendants engaged in a scheme to defraud at least one of the victims. 540 F.2d at 317-18 (7th Cir. 1976). In addition, concern regarding unanimity, should it exist at the time of trial, can be remedied through instructions to the jury. *Davis*, 471 F.3d at 791. Defendants' claim that evidence of their fraudulent conduct as to the non-Chicago entities would be improper propensity evidence is equally baseless. Defendants' conduct towards the non-Chicago governmental entities was part of a continuing course of conduct with one

goal – to draw down grant funds from a variety of governmental entities across the country in order to enrich defendants' company. As discussed above, defendants' scheme encompassed more than the City of Chicago's grant; accordingly, proof of that scheme is not proof of "other bad acts" but instead evidence of the crime.

Finally, defendants argue that a central issue at trial will involve interpretation of the grant language, and because one of the four grants at issue contained different language regarding when the governmental entity could be billed for expenses, there is a possibility that a jury might convict on an improper basis. This argument is a red herring. As the indictment makes clear, the core of the fraud alleged here is that defendants created false checks and false invoices that fraudulently represented that defendants had paid or incurred expenses. The language of the grants – specifically, whether 350Green could bill based on expenses paid or incurred – is immaterial where defendants are accused, as they are here, of falsely representing both the paid and incurred expenses. That is, there is no provision in any of the contracts allowing defendants to falsely represent that they had either paid or incurred expenses. The language of the contracts is therefore immaterial to whether or not defendants made false representations to their victims.

Finally, defendants have filed a motion to dismiss the indictment based on lack of venue, which would be triggered in the event that the Court determines that the indictment is duplicitous. R.35 at 2, 9. Defendants claim that, if the schemes to defraud the California and Pennslyvania governmental entities are considered

separate crimes, venue is not proper in this district for those crimes. For the reasons set forth above, defendants' characterization of the indictment as charging multiple, separate schemes is not accurate. As such, this Court should deny defendant's motion to dismiss the indictment for lack of venue.

## IV.    CONCLUSION

As set forth above, a plain reading of the indictment makes clear that defendants are charged with a single fraud scheme that affected multiple victims. Accordingly, the indictment is not duplicitous, venue is proper, and defendant's motions to dismiss for duplicitousness and lack of venue should be denied.

<div style="margin-left:50%">

Respectfully submitted,

ZACHARY T. FARDON
United States Attorney


By:    _s/Maureen E. Merin_____
       MAUREEN E. MERIN
       Assistant United States Attorney
       219 South Dearborn Street, 5th Floor
       Chicago, Illinois 60604
       (312) 353-1457

</div>